THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DOUGLAS CHENGARY, Defendant-Appellee.

First District (3rd Division)   No. 1—97—2504

Opinion filed November 25, 1998.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Arleen Anderson, and Jose A. Lopez, Assistant State's Attorneys, of counsel), for the People.

Thomas P. Cernek and Jeffrey T. Cernek, both of Thomas P. Cernek & Associates, of Chicago, for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Defendant was charged with driving under the influence of alcohol (DUI). We review whether subpoenas *duces tecum* for a defendant's medical records by the State's Attorney were properly quashed by the trial court. We conclude that the subpoenas were not properly quashed and reverse.

On March 15, 1996, defendant Douglas Chengary and Debra Ruzich were involved in a car accident. Ruzich was later charged with three offenses: leaving the scene of a personal injury accident; operating a vehicle without registration; and failing to yield the right of way. The State subpoenaed defendant to appear as complaining witness at Ruzich's trial. Before trial, defendant's mother phoned Assistant State's Attorney Leanna Rajk and gave several excuses why her son

could not appear, one of which was that he had been drinking before the accident. Rajk explained that defendant had not been charged with a crime and that the State had no evidence to support criminal charges against him.

When defendant appeared for Ruzich's trial, Assistant State's Attorney Rajk spoke with him. Defendant discussed his injuries but told Rajk that he was unable to identify Ruzich as the driver of the car that hit him. After defendant left the courtroom, Ruzich's attorney, Raymond Garza, told Rajk that he had evidence to support a DUI charge against defendant. A few days later, Garza sent Rajk a letter. Included were defendant's hospital records from the day of the accident, which revealed that defendant had a blood-alcohol concentration level of .24. Another assistant State's Attorney investigated the case further and later charged defendant with driving under the influence of alcohol. The State then issued subpoenas *duces tecum* to the Chicago fire department and St. Margaret's Hospital, where defendant had been treated after the accident. The subpoenas were returnable to the trial court.

Defendant moved to quash the subpoenas and to dismiss the complaint. At the court's direction defendant relabeled the latter motion as a motion to quash arrest. Defendant argued, in part, that the State did not follow proper discovery procedures in issuing the subpoenas. The trial court initially denied defendant's motion to quash subpoenas. But after hearing testimony from Assistant State's Attorney Rajk and arguments from counsel on defendant's other motions, the trial court ruled that Garza had obtained defendant's medical records with an "improper" subpoena. The court did not elaborate on this finding. The trial court then granted defendant's motion to quash subpoenas. The State filed a certificate of impairment and appealed.

The State essentially raises two issues on appeal: (1) the trial court's factual determination that Garza improperly obtained the subpoenas is not supported by the evidence; and (2) even if Garza's actions were improper, the State's subpoenas for the medical records were not.

■ In reviewing a motion to quash, we will not reverse a trial court's findings of fact unless they are manifestly erroneous. See *People v. Villarreal*, 152 Ill. 2d 368, 373, 604 N.E.2d 923 (1992). We agree with the State that the trial court's finding that Garza obtained defendant's medical records with an improper subpoena is not supported by evidence in the record. Garza did not testify, and the record is silent on how he obtained the records he passed along to the State. Defendant asks us to presume, absent evidence to the contrary, that Garza obtained the medical records improperly. The presumption shifts

the burden of proof. On a motion to quash, the burden is initially on defendant to establish the basis. *Cf. People v. Vargas*, 277 Ill. App. 3d 289, 294, 660 N.E.2d 82 (1995).

■ We note that there are several circumstances under which an attorney may legally obtain medical records without violating the healthcare provider/patient privilege. Section 8—802 of the Code of Civil Procedure directs that a healthcare practitioner may not disclose information acquired while attending a patient, but lists 10 exceptions and states:

> "In all instances where a patient or the patient's representative seeks damages for personal injury, death, pain and suffering, or mental or emotional injury and where a written request pursuant to Section 2—1003 has been made, then (1) the healthcare practitioner is authorized to provide information regarding the patient to attorneys for any of the parties in *pending civil, criminal*, or administrative proceedings *** and (2) any attorney for any party in *any civil, criminal*, or administrative action brought by or against a patient *** wherein the patient's physical or mental condition is an issue may obtain in written or verbal form as described in Section 2—1003 any information that any healthcare practitioner has acquired in attending to the patient in a professional character." (Emphasis added.) 735 ILCS 5/8—802 (West 1996).

In asking us to presume that Garza violated defendant's healthcare practitioner/patient privilege, defendant ignores circumstances where the records could have been legally subpoenaed in a civil case between Ruzich and defendant or in the criminal case pending against Ruzich. See 735 ILCS 5/8—802 (West 1996).

■ Even if we assumed that Garza improperly obtained the medical records, the State did not improperly issue its subpoenas. The trial court concluded, without explanation, that Garza's actions (whatever they might have been) justified quashing the State's subpoenas. The State argues this was error because even if we assume Garza acted improperly, the State discovered the records from an "independent source" or the records would have been "inevitably discovered." See *Nix v. Williams*, 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501 (1984). Defendant responds that the medical records would not have been discovered without the information Garza sent, and so the records are the "fruit of a poisonous tree."

The "fruit of a poisonous tree," "inevitable discovery," and "independent source" rules do not fit the facts of this case. These rules apply when a defendant moves to exclude evidence obtained through illegal government conduct. See *United States v. Bulgier*, 618 F.2d 472,

478 (7th Cir. 1980) (search by private airport personnel not in violation of fourth amendment). Defendant alleges no facts to support an inference that the State acted illegally. The State is allowed to subpoena medical records under section 8—802 of the Code of Civil Procedure (735 ILCS 5/8—802 (West 1996)) and section 11—501.4 of the Illinois Vehicle Code (625 ILCS 5/11—501.4 (West 1996)).

The exclusionary rule deters government officials from violating constitutional rights. *United States v. Calandra*, 414 U.S. 338, 348, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 620 (1974). The conduct of private individuals, even if illegal, is not within the scope of fourth amendment protection against unreasonable searches and seizures. *Burdeau v. McDowell*, 256 U.S. 465, 475, 65 L. Ed. 1048, 1051, 41 S. Ct. 574, 576 (1921). As an example: in *People v. Sellars*, 93 Ill. App. 3d 744, 417 N.E.2d 877 (1981), an informant told police that, while burglarizing the defendant's house, he took property stolen by someone else in an earlier burglary. We held that the informant's tip supported probable cause to search defendant's apartment and did not run afoul of the fourth amendment. We held that " 'evidence which would be inadmissible if seized by the police is admissible if seized by some non-police related third-party.' " *Sellars*, 93 Ill. App. 3d at 748, quoting *People v. Nunn*, 55 Ill. 2d 344, 353, 304 N.E.2d 81 (1973).

Defendant does not argue that Garza acted as an agent of the State. Garza, without prompting by a government official, gave incriminating medical records to the State's Attorney. See *Coolidge v. New Hampshire*, 403 U.S. 443, 486-89, 29 L. Ed. 2d 564, 594-96, 91 S. Ct. 2022, 2048-49 (1971) (woman who gave police the defendant's guns was not an agent where there was no evidence that police coerced her assistance).

Defendant also argues that under *People v. Walley*, 215 Ill. App. 3d 971, 575 N.E.2d 596 (1991), *People v. Hart*, 194 Ill. App. 3d 997, 552 N.E.2d 1 (1990), and *Village of Arlington Heights v. Bartelt*, 211 Ill. App. 3d 747, 570 N.E.2d 668 (1991), the State did not follow proper procedures for obtaining the medical records. Defendant does not tell us what "procedures" the State failed to follow. In *Walley* and *Hart* the State obtained subpoenaed material before it was judicially reviewed. In *Bartelt*, we upheld the quash of an arrest based on information a police officer obtained from hospital personnel without following discovery rules. Unlike *Bartelt*, the State here did not attempt to circumvent discovery rules. And unlike *Walley* and *Hart*, the subpoenas here directed the hospital and fire department to comply either by appearing in court or by mailing the records to the court.

■Defendant finally argues that the complaint should be dismissed because "charging [defendant] with DUI by the State after eliciting

from him information as a prosecution witness was improper, absent admonition to him of possible self-incrimination and the need for counsel." Defendant cites section 3—3.2(b) of the American Bar Association Standards for Criminal Justice:

> "Whenever a prosecutor knows or has reason to believe that the conduct of a witness to be interviewed may be the subject of a criminal prosecution, the prosecutor or the prosecutor's investigator should advise the witness concerning possible self-incrimination and the possible need for counsel." ABA Standards for Criminal Justice § 3—3.2(b) (2d ed. 1989).

The incriminating information known to the State when defendant was interviewed was a statement his mother made to Assistant State's Attorney Rajk: that defendant did not want to testify in the Ruzich prosecution because defendant had been drinking before the accident. But the record reveals that the State did not use this statement to launch an investigation or file charges against defendant. Even if the statement gave the State "reason to believe" that defendant could be prosecuted for his conduct, defendant cites no case law to support a conclusion that a violation of the American Bar Association standards warrants the sanction of dismissal of a criminal prosecution. Even when a defendant is in custody and has been questioned without *Miranda* warnings, his remedy is not dismissal, but suppression of statements made during the interview. See *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612 (1966).

We reverse the judgment of the trial court and remand for further proceedings.

Reversed and remanded.

CERDA and LEAVITT, JJ., concur.